UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

KEVIN JOSUE IPINA-GARCIA,      )
         )
      Petitioner,      )
         )
v.      )      No. 5:21-CV-143-REW-MAS
         )
JAMES DAVID GREEN, WARDEN,      )
         )
      Respondent.      )
         )

RECOMMENDED DISPOSITION

This matter is before the Court on Petitioner Kevin Ipina-Garcia's ("Ipina-Garcia") petition for writ of habeas corpus under 28 U.S.C. § 2254. [DE 1]. Ipina-Garcia alleges two grounds for relief: that the state trial court erred by not suppressing statements he claims were obtained in violation of his *Miranda* rights, and the same court erred in assessing court costs against him. The Court requested a response from Respondent James David Green (referred to herein as "the Commonwealth")." [DE 11]. For the reasons set forth below, the Court recommends the District Court dismiss the petition.

I.    FACTS

On November 24, 2016, fourteen-year-old Angel Juarez ("Juarez") was fatally shot. Law enforcement quickly identified Ipina-Garcia as a suspect, located him, and took him into custody. *Ipina-Garcia v. Commonwealth*, 2020 WL 2091822, at *1 (Ky. 2020). Detectives Bill Brislin and Steven McCowan traveled to the jail to speak with him. *Id*. The detectives brought Officer Lorenzo Bueno with them to act as an interpreter, because Officer Bueno is a native Spanish-

speaker and the detectives were unsure whether Ipina-Garcia spoke English. *Id*. As the Kentucky

Supreme Court recounted,

> [t]he interview lasted approximately one hour and twenty-one minutes. At the outset, Detective Brislin provided *Miranda* warnings to Ipina-Garcia in English. He read these warnings from a pre-printed form. The form did not have the *Miranda* warnings printed in Spanish, however. Rather, Officer Bueno interpreted the English version of the *Miranda* warnings to Spanish.
>
> Officer Bueno testified at the suppression hearing that after he finished his recitation of the *Miranda* warnings, Ipina-Garcia responded in the affirmative. More specifically, he testified that Ipina-Garcia responded "yes" multiple times when asked if he was clear on what had just been read to him and if he understood his rights. When asked if the "yes" on the audio recording was his own voice, rather than Ipina-Garcia's, Officer Bueno clarified that he would only have said "yes" if Ipina-Garcia first said "yes." Detective Brislin similarly testified that Ipina-Garcia responded in the affirmative. He testified that Ipina-Garcia nodded his head to indicate that he understood his rights. However, he also testified about a verbal acknowledgment, saying, "I don't think you can clearly hear [Ipina-Garcia's] acknowledgment on the audio" because Ipina-Garcia is "very soft-spoken."

*Id*. (footnote omitted). The officers proceeded to interrogate Ipina-Garcia about Juarez's death.

Detective Brislin testified at the suppression hearing that he "would ask a question in English, and

Officer Bueno would then repeat that question in Spanish. Ipina-Garcia would then answer the

question in Spanish, and Officer Bueno would translate the answer into English for Detective

Brislin. Detective Brislin testified that Ipina-Garcia appeared to understand what Officer Bueno

was asking him. *Id*. at *2. Ipina-Garcia eventually admitted to fatally shooting Juarez. *Id*. The

Kentucky Supreme Court provided the following factual and procedural history that led to his

direct appeal to that court as well as this § 2254 petition:

> Ipina-Garcia was ultimately charged with murder, first-degree wanton endangerment, and tampering with physical evidence. He filed a motion to suppress the statements made during his interrogation. He argued that the *Miranda* warnings, as interpreted by Officer Bueno, were insufficient and the waiver of those rights was involuntary.
>
> At the suppression hearing, Detective Brislin and Officer Bueno testified on behalf of the Commonwealth. The defense called one witness: Nidia Pecol, a certified court interpreter and professional translator and interpreter. Pecol testified that she

2

had listened to the audio recording of the interview.  During her testimony, the defense attorney, who did not speak any Spanish, repeated certain Spanish phrases from Officer Bueno's recitation of the *Miranda* warnings, and Pecol explained why she believed these phrases were problematic.  For example, Officer Bueno used the term "franqueado," but Pecol testified that "franqueado" could mean many things (to open the way to something, to clear the way to something, to pay a tariff and free something from customs, etc.).  After reviewing a handful of these terms and phrases, Pecol testified that Officer Bueno's interpretation was "very poor Spanish" and she did not believe it was an effective interpretation of the *Miranda* rights.  She also testified that a head nod does "not necessarily" mean "yes" in Hispanic culture; rather, it is often used to show that one is paying attention to the speaker.

The trial judge orally denied the motion to suppress. He explained on the record:

> The court's going to note that Officer Bueno testified that at the time of this interview in November of [2016] that he was working with the Lexington Police Department. He was bilingual and biliterate. He grew up speaking Spanish, spoke Spanish language daily on the job and in the home. He testified that he read his—read *Miranda* warnings to suspects or defendants on a daily basis during the twenty plus years of his career. He testified that he had a dialogue with Mr. Garcia and that he believed Mr. Garcia understood the conversation and was able to understand what he was being told. As the defense points out, in [*Duckworth v. Eagan*, 492 U.S. 195 (1989)], the *Miranda* warnings have to be reasonably conveyed. I think we've heard here from them, your own transcript, that those were reasonably conveyed. I would agree it's probably a better practice to have a pre-printed *Miranda* warning typed in Spanish for all officers. Had that been done here, I think it might have been a little bit easier to get through this, but it doesn't have to be specific, it just has to be reasonably conveyed, and I think the evidence shows it was, so I will overrule the motion to suppress.

Ipina-Garcia ultimately entered a conditional guilty plea reserving his right to appeal the trial court's denial of his suppression motion.  The trial judge issued a final judgment to reflect this plea and sentenced Ipina-Garcia to thirty-three years of imprisonment.  The final judgment also ordered Ipina-Garcia to pay $165.00 in court costs.  Ipina-Garcia now appeals the trial court's denial of his suppression motion, as well as the trial court's imposition of court costs.

*Ipina-Garcia v. Commonwealth*, 2020 WL 2091822, at *2–3 (Ky. 2020).  The Kentucky Supreme Court affirmed the trial court's order denying the motion to suppress and imposition of court costs.

*Ipina-Garcia v. Commonwealth*, 2020 WL 2091822, at *6 (Ky. 2020).

Ipina-Garcia timely filed the instant motion for writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to vacate his judgment. [DE 1]. In it, he claims a violation of his Constitutional rights as related to the alleged Miranda violation he raised in his suppression motion and on direct appeal. He also raises the issue of the trial court's imposition of court costs. The Court takes each issue in turn and recommends the District Court deny relief on each.

## I.    STANDARD OF REVIEW

Pursuant to the Antiterrorism and Death Penalty Act (AEDPA),

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard of review is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

This exacting standard only applies with respect to claims that were adjudicated on the merits in the state court proceedings. "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The federal

4

courts must consider any procedural-bar issue that would preclude consideration of the petitioner's claims on the merits, including the procedural bar of the claims raised in the habeas petition that were not adjudicated in the state court. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Where the petitioner makes a factual argument, "[t]he federal court must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732, 737–38 (6th Cir. 2003).

With these principals in mind, the Court turns to Ipina-Garcia's two grounds for relief in his § 2254 petition.

## II.    ANALYSIS

### A.    GROUND ONE: THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE PETITIONS STATEMENTS MADE TO POLICE, IN VIOLATION OF HIS 5TH AND 14TH AMENDMENTS

Ipina-Garcia argues that the state trial judge erred in denying his motion to suppress his confession to the police, claiming that the *Miranda* warnings provided to him by Officer Bueno were insufficient. (R. 1, Petition, Document ID # 5.) The Commonwealth argues Ipina-Garcia has not shown that the determination of the Kentucky Supreme Court was an unreasonable application of the Constitution, laws, or treaties of the United States as interpreted by the Supreme Court of the United States, required to obtain habeas relief under 28 U.S.C. § 2254.

Ipina-Garcia claims he "had little to no understanding of the [E]nglish language and required an interpreter." [DE 1 at Page ID #5]. He argues "[t]here was also no oral acknowledgement that the petitioner understood the miranda [sic] rights but the petitioner only nodded which does not always mean an affirmation. . . . The officer had no formal training as an interpreter and also speaks a different dialect of [S]panish from the petitioner." [DE 1 at Page ID #5].

At the suppression hearing, Ipina-Garcia called certified court interpreter Nidia Pecol ("Pecol") as a defense witness. [DE 12-3 at Page ID #83-84]. Pecol "testified that it takes more than knowing English and Spanish to be an interpreter—one must be bilingual . . . biliterate . . . and bicultural . . . [.]" [DE 12-3 at Page ID # 84]. Pecol testified she did not believe Officer Bueno effectively interpreted the Miranda warnings and pointed to the specific use of certain terms that she thought were misplaced. [DE 12-3 at Page ID #84]. On cross-examination, Pecol read her English translation of the *Miranda* rights as provided by Officer Bueno:

> Look Kevin, we are officers, we are police, understand? You have the right to keep silence, maintain the silence. You know that you are not obligated to make any, give us not one word, direct any comment, but to understand, if you decide to participate in this interview, what is talked here could be used against you, or what is, also what is talked here could be used against you in a court, much later. And if you decide, during the interview, that you don't want to talk with us, you can also say, "That's it, no more, I wouldn't want to talk with you." If you wish to talk with an attorney before the interview, that also goes. You could communicate with an attorney. And if you decide that you want, that you would want an attorney here present with you, that also goes. And if you cannot pay an attorney, the service would be allowed in your favor, (unintelligible) free, you know what I mean? Do you understand what I'm saying? Okay.

*Ipina-Garcia v. Commonwealth*, 2020 WL 2091822, at *5 (Ky. 2020); [*see also* DE 12-3 Page ID #88, quoting suppression hearing transcript at 3:46:37]. The Kentucky Supreme Court correctly noted it was "Commonwealth's burden to show that Ipina-Garcia knowingly, intelligently, and voluntarily waived his *Miranda* rights." *Ipina-Garcia v. Commonwealth*, 2020 WL 2091822, at

*3 (Ky. 2020) (*citing Mills v. Commonwealth*, 996 S.W.2d 473, 482 (Ky. 1999), *overruled on
other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010)).   The Kentucky
Supreme Court then discussed *Duckworth v. Eagan*, in which the United States Supreme Court
confirmed that the *Miranda* warnings are not a "precise formulation" and "no talismanic
incantation [is] required to satisfy its structures" but the "inquiry is simply whether the warning
reasonably conve[y] to [a suspect] his rights as required by *Miranda*." *Ipina-Garcia* at *3 (quoting
*Duckworth v. Eagan*, 492 U.S. 195 (1989)) (alterations in original).  The Kentucky Supreme Court
reiterated that *Miranda* simply requires the person in custody "be warned that he has a right to
remain silent, that any statement he does make may be used as evidence against him, and that he
has a right to the presence of an attorney, either retained or appointed." *Id*. (citing *Miranda v.
Arizona*, 384 U.S. 436, 444 (1966)).

After taking a closer look at the *Miranda* warnings Officer Bueno provided Ipina-Garcia,
particularly the defense's version of the translation (which would have theoretically been the most
favorable to Ipina-Garcia), the Kentucky Supreme Court concluded "that the *Miranda* warnings
provided to Ipina-Garcia reasonably conveyed to him his constitutional rights and were not
materially misleading." *Ipina-Garcia v. Commonwealth*, 2020 WL 2091822, at *5 (Ky. 2020).
Upon review of the testimony at the suppression hearing, the Kentucky Supreme Court further
found that

> [a]ccording to the undisputed testimony of both Officer Bueno and Detective
> Brislin, Ipina-Garcia appeared to understand the questions presented to him and
> responded to those questions appropriately. He never asked for a break or to stop
> the interview, nor did he give any indication that he did not understand the questions
> or his Miranda rights. Under these circumstances, we believe that the
> Commonwealth met its burden of demonstrating that Ipina-Garcia's waiver was
> knowing, intelligent, and voluntary.

*Ipina-Garcia v. Commonwealth*, 2020 WL 2091822, at *6 (Ky. 2020).  Therefore, the Kentucky
Supreme Court found no error in the trial court's denial of the motion to suppress.

Based on this thorough analysis of the law and facts, this Court cannot find Constitutional fault with the Kentucky Supreme Court's opinion as is required for § 2254 relief. The Kentucky Supreme Court reasonably—and accurately, in this Court's view—applied *Duckworth* to the facts of this case. Additionally, the Kentucky Supreme Court did not base its decision "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). That court made the reasonable factual finding that there were several possible translations of the *Miranda* warnings provided to Ipina-Garcia presented at the suppression hearing, and though none were "talismanic incantations" of the exact words set forth in *Miranda v. Arizona*, they "reasonably conveyed" to Ipina-Garcia what his rights were at the time he was being questioned. For example, it was reasonable for the Kentucky Supreme Court to find that "you have the right to keep silence, maintain the silence" reasonably conveys the right to remain silent, even if the verbiage was awkward.

Fairminded jurists could not disagree that the Kentucky Supreme Court's application of clearly established federal law and determination of the facts in this case were both reasonable. *See Harrington v. Richter,* 562 U.S. 86, 101 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**B.    GROUND TWO: THE TRIAL COURT ERRED IN IMPOSING COURT COSTS ON PETITIONER**

Ipina-Garcia's second claim is for relief from the trial court's imposition of $165.00 in court costs. The Kentucky Supreme Court denied relief because the alleged error was not preserved at the trial court level, and therefore was reviewed for palpable error pursuant to RCr 10.26. *Ipina-Garcia* at *6. The Court found:

8

Furthermore, when the trial court does not make a determination regarding the defendant's status as a poor person, or the defendant fails to request such a determination, we will not review the imposition of court costs.

. . .

. . . Accordingly, a defendant seeking to avoid court costs must ask the trial court to determine whether he or she qualifies as a "poor person" under KRS 23A.205(2). If the defendant fails to request that determination, and the trial court does not otherwise presume that the defendant is a poor person before imposing costs, "there is no error to correct on appeal."

In the present case, the trial court did not make a determination as to whether Ipina-Garcia was a poor person under KRS 453.190(2) or whether he was unable to pay court costs and would be unable to pay said costs in the foreseeable future. Ipina-Garcia did not request the trial court to make this determination. Accordingly, there is no illegal sentence for this Court to review, nor is there any error in the trial court's decision.

*Ipina-Garcia v. Commonwealth*, 2020 WL 2091822, at *7–8 (Ky. 2020)(citations omitted).

The adequate and independent state ground doctrine states that "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation and internal quotation omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977)). Even a one sentence opinion is enough to "constitute [ ] a reasoned decision invoking a procedural bar." *Alexander v. Smith*, 311 F. App'x 875, 882 (6th Cir. 2009). Ipina-Garcia can only circumvent this rule if he can show this Court that he has just cause and will suffer prejudice. *Reed v. Ross*, 468 U.S. 1 (1984). Ipina-Garcia does not make any such arguments in his brief.

Here, the Kentucky Supreme Court refused to review the substance of this claim because Ipina-Garcia did not request the trial court determine his status as a "poor person" pursuant to KRS 453.190(2). Thus, because the Kentucky Supreme Court rejected this claim based on a state law

procedural rule that is independent of a federal question, and because Ipina-Garcia raises no federal question related to this ground for relief, and further because he provides no other cause for the Court to adjudicate this claim, the Court will recommend the district court deny it as procedurally barred here as well.

## C.    CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue where a habeas petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires a petitioner to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).  Ipina-Garcia has not made a "substantial showing" as to any claimed denial of rights.

As discussed above, reasonable jurists would not find that the Kentucky Supreme Court rendered "a decision that was contrary to, or involved an application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d).  Ipina-Garcia's § 2254 petition seeks to relitigate the facts of his suppression motion, which was already thoroughly litigated at the trial court level and thoroughly reviewed on direct appeal.   The Kentucky Supreme Court appropriately applied clearly established Supreme Court precedent on the issue and made reasonable factual determinations.  Reasonable jurists would not find that the Kentucky Supreme Court's decision was contrary to clearly established Federal law.

"When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at

least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As discussed herein, Ipina-Garcia's second ground for relief was procedurally deficient because it violated a state procedural rule and was not reviewed by the Kentucky Supreme Court on that basis.

Reasonably jurists would not debate the denial of Ipina-Garcia's § 2254 petition or conclude that he issues presented are adequate to deserve encouragement to proceed further.  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  The Court recommends the District Court find that Ipina-Garcia is not entitled to a certificate of appealability.

### III.     <u>CONCLUSION</u>

For the reasons stated above, **IT IS RECOMMENDED** that Ipina-Garcia's § 2254 petition (DE 1) be **DENIED**, that this matter be **DISMISSED WITH PREJUDICE**, and that no certificate of appealability should issue.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights concerning this Recommended Disposition.  Within fourteen days after being served with a copy of this decision, the parties may serve and file objections to the findings and recommendations herein for *de novo* determination by the District Court.  28 U.S.C. § 636(b)(1).  Failure to make timely objections will normally result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150-51 (1985).

Entered this 2nd day of March, 2023.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY